UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| NATHAN McDOWELL, | ) |
| Plaintiff, | ) Civil Action No. 3:20-cv-383-CHB |
| v. | ) |
| | ) **MEMORANDUM OPINION AND** |
| FAITH MATTINGLY, et al., | ) **ORDER** |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendants' Motion for Summary Judgment, [R. 25]. Plaintiff has not responded to the motion. Defendant filed a Reply Brief in Support of Motion for Summary Judgment, arguing that Plaintiff's failure to respond is an independent basis upon which to grant summary judgment, [R. 29]. Plaintiff has not responded to that Reply Brief. For the reasons set forth below, the Court will grant Defendants' Motion for Summary Judgment, [R. 25].

### I. BACKGROUND

Plaintiff, an inmate, was transferred to Roederer Correctional Complex in LaGrange, Kentucky and received an initial intake on February 19, 2020. [R. 27, pp. 28–31] On March 16, 2020, Plaintiff received a prescription for Lexapro 10 mg for depression. *Id.* at 26–27. He signed an informed consent form for the medication, acknowledging his understanding of possible side effects, including nausea, diarrhea, headaches, anxiety, insomnia, fatigue, tremors, restlessness, mania/hypomania, sedation, vomiting, and impaired cognitive and motor functioning. *Id.* at 3. A few days later, on March 22, 2020, the dosage of Plaintiff's Lexapro prescription was increased to 20 mg. *Id.* at 4.

On April 23, 2020, Plaintiff complained of chest pain and submitted a healthcare request. *Id.* at 24. He was medically evaluated, told to rest, take Tylenol, and inform prison staff of any worsening symptoms. *Id.*

Plaintiff alleges that, over the course of the next several days, he was mistakenly administered two drugs not prescribed to him, Remeron and Trileptal. First, he alleges that, on April 24, 2020, the medical staff mistakenly administered these two drugs during evening pill call, in addition to his prescribed dose of Lexapro. The following day, April 25, 2020, Plaintiff received his daily COVID-19 assessment, and his temperature, pulse rate, and oxygen saturation levels all appeared normal. *Id.* at 23; [R. 25-2, ¶ 7(a)]. Plaintiff alleges that he again mistakenly received Remeron and Trileptal during evening pill call that night. At his April 26, 2020 COVID-19 assessment, his temperature and oxygen saturation appeared normal. [R. 27, p. 22; R. 25-2, ¶ 7(b)]. He alleges that he also received Remeron and Trileptal that evening.

After evening pill call on April 26, 2020, Plaintiff complained of dizziness and nausea. Medical staff received notification of these complaints at 9:20 PM. *Id.* at 20. By 9:26 PM, Nurses Faith Mattingly and Bridgette Banta began treatment. *Id.* Their treatment notes indicate that Plaintiff was alert, oriented to person, and responsive to verbal stimuli, but his pupils were dilated and sluggish. *Id.* At 9:38 PM, his vital signs appeared normal. *Id.* The two nurses contacted the on-call provider and poison control and were advised to monitor Plaintiff for serotonin syndrome. *Id.* at 20; [R. 25-2, ¶ 7(b)]. Plaintiff was then taken to the medical unit for further assessment. [R. 27, p. 20] During that time, he became more alert and fully oriented to person, place, and time. [R. 25-2, ¶ 7(b)] His pupils also became equal and reactive to light, and his vital signs appeared normal and stable. *Id.* Plaintiff was assigned to a bottom bunk for the following forty-eight hours. [R. 27, p. 20]

The following morning, on April 27, 2020, Plaintiff's vital signs appeared normal. *Id.* at 19; [R. 25-2, ¶ 7]. That afternoon, Nurse Practitioner Daniel Long treated Plaintiff, and Plaintiff's neurological exam, gait, and vital signs appeared normal. [R. 27, p. 17; R. 25-2, ¶ 7(c)]. The treatment notes indicate that Plaintiff had been given Trileptal and Remeron by mistake, but Plaintiff reported "feeling much better today." [R. 27, p. 17] Plaintiff's medical records indicate that his vitals were checked each day for the following five days (April 28, 2020 through May 2, 2020) and each time, his vitals appeared normal. *Id.* at 12–16; [R. 25-2, ¶ 7(c)].

At approximately 5:50 PM on May 2, 2020, Plaintiff was treated for a fall and possible syncopal episode. [R. 27, p. 10] Two months later, on July 9, 2020, Plaintiff was treated for another fall and possible syncopal episode. *Id.* at 8.

Meanwhile, on May 29, 2020, Plaintiff filed his complaint in this case. [R. 1] He asserts a 42 U.S.C. § 1983 claim against Nurse Mattingly, Nurse Banta, and Mary Brown, a licensed practical nurse ("LPN"). More specifically, he alleges that these three individuals were deliberately indifferent to his serious medical needs by providing unprescribed medications and failing to properly treat him for the side effects of those medications.

After the close of discovery, Defendants filed the present Motion for Summary Judgment, [R. 25]. Plaintiff has not filed a response, and the time for filing such a response has expired. This matter is therefore ripe for review.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment if it finds that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

*Winkler v. Madison County*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Anderson*, 477 U.S. at 256. That burden may be satisfied by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case for which he or she bears the burden of proof. *Celotex Corp.*, 477 U.S. at 323.

Once the moving party satisfies this burden, the non-moving party must then produce "specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 205 (6th Cir. 1995) (citation omitted). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, the Court is not obligated to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.* In fact, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

materials" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Ultimately, if the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, then there is no genuine issue of material fact and summary judgment is appropriate. *Matsushita Elec.*, 475 U.S. at 587 (citation omitted).

### III. ANALYSIS

Defendants argue that summary judgment is appropriate because (1) Plaintiff failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act, and (2) Plaintiff cannot demonstrate the necessary objective and subjective elements of a deliberate indifference claim. [R. 25] Defendants further argue that Plaintiff's failure to respond to the Motion for Summary Judgment justifies granting the motion. [R. 29]

On this last point, the Court notes that Rule 56(e) expressly addresses situations in which a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact." The rule provides that, in such situations, the court may take certain actions, including "consider[ing] the fact undisputed for purposes of the motion" and "grant[ing] summary judgment *if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it*." Fed. R. Civ. P. 56(e)(2), (3) (emphasis added). Accordingly, Plaintiff's failure to respond to the Motion for Summary Judgment does not entitle Defendants to a default summary judgment. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was

unopposed, but, rather, must consider the merits of the motion." (citation omitted)). However, under such circumstances, the Court may accept Defendants' evidence as undisputed and may enter judgment in Defendants' favor if the evidence demonstrates that they are entitled to judgment. With these principles in mind, the Court will consider Defendants' arguments.

    a. **Exhaustion**

Under § 1997e(a) of the Prison Litigation Reform Act ("PLRA"), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Wright v. Morris*, 111 F.3d 414, 417 (6th Cir. 1997). Thus, to assert a § 1983 claim, an inmate must first exhaust his or her administrative remedies. However, the inmate "need exhaust only such administrative remedies as are 'available.'" *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016). To determine whether a remedy is "available," the Court must consider "the real-world workings of prison grievance systems" and determine whether the remedy, while "officially on the books, is not capable of use to obtain relief." *Id.* at 1859. "But aside from that [availability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." *Id.* at 1856–57 (citation omitted).

In the context of a motion for summary judgment, the moving party carries the initial "burden of showing that there was a generally available administrative remedy, and that the prisoner did not exhaust that remedy." *Bennett v. Mich. Dep't of Corr.*, No. 15-14465, 2017 WL 3208591, *5 (E.D. Mich. July 24, 2017) (citation omitted). Once the moving party satisfies this burden, the non-moving party must "come forward with evidence showing that there is

something in his [or her] particular case that made the existing and generally available remedies effectively unavailable to him [or her]." *Id.*

Defendants argue that, under the Kentucky Department of Corrections' Inmate Grievance Procedures, [R. 25-5], Plaintiff must exhaust his administrative remedies by first submitting a written grievance and then, if that grievance is denied, appealing the denial to the Medical Director. [R. 25, p. 6] Defendants argue that Plaintiff failed to file any grievance related to this § 1983 claim. *Id.* at 6–7. To support this argument, Defendants provide an affidavit from the Roederer Correctional Complex Grievance Coordinator. [R. 25-4] The Grievance Coordinator explains, "As of December 7, 2020, Nathan McDowell has not filed any grievances at Roederer Correctional Complex, nor has Nathan McDowell appealed any grievances at Roederer Correctional Complex." *Id.* ¶ 5. The Grievance Coordinator also explains that the grievance process was available to Plaintiff throughout the course of the COVID-19 pandemic. *Id.* ¶ 6.

Defendants have therefore "inform[ed] the district court of the basis for [their] motion, and identif[ied] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [they] believe demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. More specifically, they have satisfied their burden of demonstrating "that there was a generally available administrative remedy, and that the prisoner did not exhaust that remedy." *Bennett*, 2017 WL 3208591, at *5 (citation omitted).

The burden therefore shifts to Plaintiff, the non-moving party, to produce "specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." *Bill Call Ford, Inc.*, 48 F.3d at 205 (citation omitted). Plaintiff "has an *affirmative duty* to direct the court's attention to those specific portions of the record upon

which [he] seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d at 655 (emphasis added). With respect to Defendants' exhaustion argument, Plaintiff must "come forward with evidence showing that there is something in his [or her] particular case that made the existing and generally available remedies effectively unavailable to him [or her]." *Bennett*, 2017 WL 3208591, at *5.

As previously noted, Plaintiff has not responded to Defendants' Motion for Summary Judgment. Plaintiff has therefore failed to satisfy his burden of demonstrating that the existing administrative remedies were "effectively unavailable to him." *Id.* On this point, Defendants anticipated that Plaintiff would claim that the administrative remedies were unavailable to him due to the ongoing COVID-19 pandemic or because the prison's grievance counselor lost his written grievance. Neither argument is persuasive in this case. First, Plaintiff has not responded to Defendants' Motion for Summary Judgment and has not, therefore, made any such arguments. Further, the affidavit of the Grievance Coordinator indicates that the grievance procedures were available to Plaintiff during the relevant time period. [R. 25-4, ¶ 6] There is no evidence contradicting this statement, nor is there any evidence (nor any allegation by Plaintiff) that the Grievance Counselor lost his grievance.

In sum, Defendants have satisfied their burden of demonstrating the absence of a genuine issue of material fact. Plaintiff has failed to satisfy his burden of identifying "specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." *Bill Call Ford, Inc.*, 48 F.3d at 205 (citation omitted). The evidence of record demonstrates that Plaintiff did *not* file a grievance with the prison, as required by the facility's rules. The Court therefore finds that, based on the uncontradicted evidence of record, Plaintiff failed to exhaust the administrative remedies available to him as an inmate at Roederer

Correctional Complex. This alone is a sufficient basis for granting summary judgment in Defendants' favor. *See Arflack v. Cty. of Henderson, Kentucky*, 412 F. App'x 829, 831–32 (6th Cir. 2011).

### b. Deliberate Indifference

Though the Court finds that Plaintiff failed to exhaust his administrative remedies, it will nevertheless consider whether a genuine issue of material fact exists with respect to the underlying § 1983 claims.

The Eighth Amendment prohibits prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs. *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estell v. Gamble*, 429 U.S. 97, 104 (1976)). To prove a deliberate indifference claim, the plaintiff must satisfy both an objective and subjective component. *Id.* (citations omitted). First, under the objective component, there must be a "sufficiently serious" medical need. *Id.* (citations omitted). Under the subjective component, the inmate or detainee must "show that the prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Id.* (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)).

### 1. Objective Element (Serious Medical Need)

To satisfy the objective element of a deliberate indifference claim, "a plaintiff must identify a serious medical need, which is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Martin v. Warren County*, 799 F. App'x 329, 3378 (6th Cir. 2020) (quoting *Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotation marks omitted)). If the serious medical need is "so obvious that even a lay person" would

recognize it does not require verifying medical proof that the delay in care caused a serious medical injury. *See, e.g.*, *Blackmore*, 390 F.3d at 898. For deliberate indifference claims "involving minor maladies or non-obvious complaints of a serious need for medical care," medical evidence of causation is required. *Id.*

In the present case, Defendants argue that the receipt of wrongful medication, without more, does not necessarily constitute a serious medical need, citing *Cotten v. Bureau of Prisons*, No. 4:19CV21-RH-HTC, 2020 WL 907583 (N.D. Fla. Jan. 22, 2020), *report and recommendation adopted*, 2020 WL 905538 (N.D. Fla. Feb. 25, 2020). In that case, the plaintiff-inmate alleged that a nurse provided her the wrong medication on multiple occasions and further alleged that an administrator admitted that the mistake could have been deadly, "especially with the reaction [Cotten] presented with." *Id.* at *1. The court held that Cotten failed to state a claim for deliberate indifference under the Eighth Amendment. With respect to the objective element of the test, the court explained that Cotten's allegations were "insufficient to show that Cotten suffered a serious medical need, even assuming that she was exhibiting side effects from the medication." *Id.* at *8. The court explained further,

> Specifically, there are no facts showing that Cotten needed further medical treatment or that lack of treatment posed a substantial risk of harm to Cotten. Indeed, as stated above, there are no allegations in any version of Cotten's complaints that she suffered any additional or other harm because she did not get additional treatment. . . . [T]here is no evidence that Cotten sought further treatment after the incident while at FCI Tallahassee or after she was transferred to FCI Waseca.
>
> Moreover, there is no allegation that the side effects she initially experienced were more than temporary or that they did not subside or resolve on their own without medical intervention. Cotten, does not allege, in any of her complaints, for example, that she has suffered any symptoms that were made worse without treatment or that required later treatment. At most, she alleges, in conclusory fashion, that the side effects were long-lasting and "could" have been deadly. Conclusory allegations, however, are insufficient. The allegations in Cotten's complaints simply would not cause a lay person to recognize that Cotten needed a doctor's attention. To the

> contrary, Cotten alleges in her initial complaint that when the officers requested medical attention, the medical staff indicated that further medical attention was not necessary and Cotten has failed to allege any facts sufficient to dispute that determination. Thus, Cotten has failed to show she suffered a serious need.

*Id.* at *8–9.

Defendants contend that the present matter is comparable to the *Cotten* case. First, Defendants argue, the evidence indicates that the side effects Plaintiff experienced were mild and temporary, and they resolved on their own. [R. 25, p. 12] Defendants also argue that the wrongful administration of medication in this case did not pose a sufficiently serious risk of harm to Plaintiff. Lastly, Defendants argue that Plaintiff did not need any treatment in addition to the treatment provided at the prison, and the treatment at the prison was appropriate.

For support, Defendants point to Plaintiff's medical records, [R. 27], and the affidavit of Dr. Grant Phillips, [R. 25-2]. These records indicate that Plaintiff complained of dizziness and nausea on the evening of April 26, 2020. [R. 27, p. 20] He told the nurses that he felt nauseous, so he went to the bathroom to vomit,[1] and he felt dizzy and unsteady on his feet as he returned to his bunk. *Id.* Medical staff received notification of these complaints at 9:20 PM, around which time Plaintiff was alert, oriented to person, and responsive to verbal stimuli. *Id.* By 9:38 PM, Plaintiff's vital signs appeared normal. *Id.* The treatment notes do not indicate that Plaintiff required any medication or other treatment. He was monitored for serotonin syndrome, but the records do not indicate, nor does Plaintiff allege, that he suffered from that condition or needed any treatment related to that condition. *Id.*; [R. 25-2, ¶ 7(b)].

---

[1] In his complaint, Plaintiff alleges that he vomited and defecated on himself and was unresponsive for several minutes before the nurses arrived. [R. 1, p. 5] There is no evidence to support these allegations. There are no indications in the medical records that Plaintiff actually vomited, or that he defecated on himself. The records indicate that Plaintiff was responsive to verbal stimuli at the time of the nurses' arrival. [R. 27, p. 20]

Defendants have therefore informed the Court of the basis for their motion and identified the evidence of record supporting that motion. Stated another way, they have demonstrated the absence of a genuine issue of material fact with respect to the objective element of the deliberate indifference test. The burden therefore shifts to Plaintiff to produce "specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." *Bill Call Ford, Inc.*, 48 F.3d at 205 (citation omitted).

Plaintiff has failed to respond to the Motion for Summary Judgment and has therefore failed to meet his burden. Further, the uncontradicted evidence of record, as recited above, indicates that Plaintiff did not present with a serious medical need. His medical records indicate that he presented with dizziness and nausea, and he was somewhat disoriented with dilated and sluggish pupils. [R. 27, p. 20] Within minutes, however, these symptoms resolved on their own, and his vital signs were normal, he became more oriented, and his pupils returned to normal. *Id.*; [R. 25-2, ¶ 7]. In short, there is no evidence that the mild side effects (nausea, dizziness) were "more than temporary or that they did not subside or resolve on their own without medical intervention." *Cotten*, 2020 WL 907583, at *9.

Further, there is no evidence indicating that Plaintiff required additional medical treatment, or that the lack of treatment posed any risk of harm to him. In his complaint, Plaintiff states that he asked to be admitted to the hospital to have his stomach pumped, but medical staff said it was unnecessary. [R. 1, p. 5] He has produced no evidence that such treatment was necessary, and Dr. Phillips's testimony indicates that the treatment provided by the medical staff was appropriate and within the standard of care. [R. 25-2, ¶ 7(b)]. Plaintiff has not produced any evidence to contradict this, nor has Plaintiff produced any evidence suggesting that the combination of medications posed a serious risk of harm. Dr. Phillips's testimony explains that "[c]onsuming Lexapro, Remeron, and

Trileptal for three days in a row, as Mr. McDowell alleges, would not result in lasting adverse effects on the patient." *Id.* ¶ 7(d). He also states that Plaintiff "does not appear to have suffered any long-term effects as a result of the subject incident," and the medications would have metabolized out of his system within twenty-four to forty-eight hours. *Id.* ¶ 7(e). Further, while Plaintiff suffered from falls and possible syncopal episodes a few months after the April 2020 incident, he has not produced any evidence that such falls were in any way related to taking the wrong medication in April 2020, and Dr. Phillips's testimony rejects that possibility. *Id.* Plaintiff has presented no evidence to contradict this expert testimony.

Simply stated, a reasonable jury could not review the undisputed evidence of record and conclude that Plaintiff presented with a serious medical need. Moreover, even if a reasonable jury could conclude that Plaintiff presented with a serious medical need, it could not reasonably find that the need was obvious. Examples of obvious medical needs include complaints of sharp and severe stomach pains for an extended period of time (over forty-eight hours) and vomiting, *Blackmore*, 390 F.3d at 899; seizures, *Griffith v. Franklin County*, 975 F.3d 554, 565 (6th Cir. 2020); and a fever accompanied by vomiting, *Shade v. Middletown, Ohio*, 200 F. App'x 566, 569 (6th Cir. 2006). The Sixth Circuit has also held that an unresponsive inmate lying face down and exhibiting symptoms of alcohol-withdrawn delirium exhibited an obvious medical need. *Bertl v. City of Westland*, No. 07-2547, 2009 WL 247907 (6th Cir. Feb. 2, 2009). Plaintiff's medical records indicate that he initially complained of nausea and dizziness, and within a short time, he had stabilized and needed no further medical treatment (other than monitoring for serotonin syndrome). Under the undisputed facts of this case, a reasonable jury could not find that mild complaints of nausea and dizziness were so obvious that even a lay person would recognize the need for medical attention. For claims like this, "involving minor maladies or non-obvious complaints of a serious need for medical care," medical evidence of

causation is required. *Blackmore*, 390 F.3d at 898. Plaintiff has not produced any such evidence. Thus, even if a reasonable jury could conclude that Plaintiff presented with a serious medical need, his claim must fail for lack of proof of causation.

In sum, the Court finds that, based on the uncontradicted evidence of record, a reasonable jury could not find that Plaintiff presented with a serious medical need. Further, even if a reasonably jury could find that Plaintiff presented with a serious medical need, it could not reasonably conclude that that need was obvious, and therefore, evidence of medical causation is required. No such evidence exists in the record. Plaintiff has therefore failed to satisfy the objective element of the deliberate indifference test.

### 2. Subjective Element (State of Mind)

Even if Plaintiff could demonstrate a serious medical need, he could not satisfy the subjective component of his deliberate indifference claim based on the evidence of record.

To satisfy the subjective component of the deliberate indifference test, the pretrial "detainee must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Winkler*, 893 F.3d at 891 (quoting *Spears v Ruth*, 589 F.3d 249, 254 (6th Cir. 2009)) (internal quotation marks omitted). "A defendant has a sufficiently culpable state of mind if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The Sixth Circuit has explained that "[t]his means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). In other words, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of

deliberate indifference." *Blackmore*, 390 F.3d at 896 (quoting *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir.1994)) (internal quotation marks omitted).

Further, while "[a] plaintiff need not show that the defendant acted with the very purpose of causing harm," he "must show something greater than negligence or malpractice." *Winkler*, 893 F.3d at 891 (citing *Farmer*, 511 U.S. at 835); *see also Bowman v. Corrections Corp. of America*, 350 F.3d 537, 544 ("Mere negligence or malpractice is insufficient to establish an [Eighth] Amendment violation." (citation omitted)). Thus, with respect to deliberate indifference claims against health care providers, the Supreme Court has explained that a claim of mere medical negligence will not satisfy this subjective element. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Other federal courts have held that, with respect to a deliberate indifference claim based on administration of the wrong medication, the plaintiff must show that the defendants "gave [him] the wrong medication with the knowledge that doing so posed a risk of serious harm to [him]." *Cotten*, 2020 WL 907583, at *10 (citing *Mahan v. Plymouth Cnty. House of Corrections*, 64 F.3d 14, 18 (1st Cir. 1995)); *see also Martinez v. United States*, 812 F. Supp. 2d 1052, 1059–60 (C.D. Cal. 2010) (explaining that "there is no Eighth Amendment violation when jail officials give the wrong medication to an inmate unless they were aware the inmate would react negatively to the medication" (citations omitted)); *Callaway v. Smith County*, 991 F. Supp. 801, 809 (E.D. Tex. 1998) ("Callaway has offered nothing to show that he was given the wrong dosage of Crixivan as a result of deliberate indifference to his serious medical needs, as opposed to a simple mistake or to negligence by the medical staff at the jail. His claim on this point must fail."); (*Herndon v. Whitworth*, 924 F. Supp. 1171, 1173–74 (N.D. Ga. 1995) (administering

wrong medication did not amount to deliberate indifference where the plaintiff failed to demonstrate that the mistake was "so grossly incompetent, inadequate, or intolerable so as to shock the conscience or to be intolerable to fundamental fairness"). "Simply giving [the plaintiff] the wrong medication is not sufficient to constitute an Eighth Amendment claim." *Cotten*, 2020 WL 907583, at *10.

Defendants first argue that Plaintiff cannot prove this subjective element because (1) he cannot demonstrate that Defendants gave him the wrong medication with the knowledge that doing so posed a risk of serious harm to him, and (2) because he cannot demonstrate that Defendants intentionally failed to correct the mistake or provide appropriate treatment.

Based on the uncontradicted evidence of record, the Court agrees. First, there is no evidence whatsoever to indicate that Defendants "gave [Plaintiff] the wrong medication with the knowledge that doing so posed a risk of serious harm to [him]." *Cotten*, 2020 WL 907583, at *10 (citing *Mahan*, 64 F.3d at 18). Nor is there any evidence that Defendants, upon realizing the mistake, intentionally failed to correct the mistake or intentionally failed to provide appropriate treatment. In fact, there is no evidence that medical staff was in any way indifferent to Plaintiff's complaints of nausea and dizziness. The records indicate that nurses arrived within six minutes of receiving his complaint, they checked his vitals and assessed him, and contacted the on-call supervisor and poison control. [R. 27, p. 20] Within minutes, he was more oriented, his pupils had normalized, and his vitals were stable. *Id.*; [R. 25-2, ¶ 7(b)]. He was then monitored for serotonin syndrome and ordered to sleep on a bottom bunk for the next forty-eight hours. *Id.* Thus, from the uncontradicted evidence, it appears that Plaintiff's condition resolved on its own, after which time he was closely monitored out of an abundance of caution. While Plaintiff alleges that he requested to have his stomach pumped and was told that this was unnecessary, he

has produced no evidence indicating that such action would have been necessary or even helpful. In fact, Defendants have produced expert testimony that Nurses Mattingly and Banta[2] acted appropriately in assessing and treating Plaintiff, and they acted within the standard of care. [R. 25-2, ¶ 7(b)]

Simply stated, Plaintiff has produced no evidence suggesting that he was given the wrong medication as a result of deliberate indifference to his serious medical needs, as opposed to a simple mistake or negligence. Thus, even assuming Plaintiff presented with a serious medical need, Plaintiff has failed to demonstrate the subjective element of the deliberate indifference test.

## IV. CONCLUSION

For the reason set forth above, the Court finds that, based on the uncontradicted evidence of record, there is no genuine issue of material fact with respect to Defendants' exhaustion argument, and a reasonable jury could not find that Defendants were deliberately indifferent to Plaintiff's serious medical need, even after all reasonable inferences are drawn in Plaintiff's favor. The Court will therefore grant Defendants' Motion for Summary Judgment, [R. 25]. Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion for Summary Judgment, [R. 25], is **GRANTED**. All remaining claims in this case are **DISMISSED WITH PREJUDICE** and the matter is **STRICKEN** from the Court's active docket.

This the 19th day of April, 2021.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

---

[2] With respect to Nurse Mary Brown, Defendants argue that she had no personal involvement in the alleged incident. [R. 25, pp. 17–18] The Court need not reach that issue, however, because even assuming Nurse Brown was in some way personally involved in the misadministration of medications or Plaintiff's treatment, the evidence does not support a claim of deliberate indifference against any of the three defendants.